UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

v.                                                                    CASE NO. 8:13-CR-224-T-33AEP

ANTOUIN L. BARKER

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion to Suppress Illegally Seized Evidence and Request for an Evidentiary Hearing ("Motion") (Dkt. No. 12.), which was referred to the undersigned by the Honorable Virginia M. Covington for a Report and Recommendation. (Dkt. No. 17.) The Defendant requests that any and all physical evidence[1] and statements obtained from Defendant by the Hillsborough County Sheriff's Office ("HCSO") Street Crimes Unit on February 12, 2013, be suppressed. Specifically, Defendant asserts that the discovery of a firearm on Defendant's person and subsequent statements made by him should be suppressed because HCSO Deputies illegally detained and searched Defendant in contravention of his Fourth Amendment rights. Defendant contends that all evidence obtained as a result of this alleged illegal detention is "fruit of the poisonous tree." *See Wong Sun v. United* States, 371 U.S. 471 (1963). The United States of America filed its Response in Opposition to Defendant's Motion. (Dkt. No. 14.) The United States concedes that Defendant was not properly *Mirandized*,

---

[1] The only physical evidence cited by Defendant in the Motion (Dkt. No. 12) or during the September 18, 2012 evidentiary hearing was a .22 caliber firearm ("firearm"). Therefore, for purposes of this Report and Recommendation, the Court will only focus on the firearm as the seized physical evidence at issue in this matter.

and thus asserts that it will not introduce Defendant's post-arrest statements at trial. (*Id.* 9.) As to the firearm located on Defendant's person, the United States asserts that the Motion should be denied because the HCSO Deputies lawfully searched Defendant upon his consent, or alternatively, during a valid investigatory stop HCSO Deputies legally located the firearm during a pat-down of Defendant conducted for officer safety purposes.[2] The parties appeared before the Court for an evidentiary hearing on these issues on September 18, 2013. For the reasons stated herein, the undersigned recommends that Defendant's Motion be granted in part as to Defendant's statements and be denied in part as to the firearm.

**A. Findings of Fact**

On February 12, 2013, Deputies Brian Jackson and Jennifer Wells were on a routine patrol, in a marked patrol car, and in uniform. At approximately 7:34 p.m., the Deputies observed Defendant riding a bicycle that was not properly equipped with a light in the middle of the road and against traffic. The Deputies stopped Defendant at the intersection of 127th Avenue East and Saint James Place Drive. Both Deputies exited their patrol car, approached Defendant, and detained him to investigate two bicycle traffic infractions for driving his bicycle against traffic and for failing to have a light on his bicycle. Upon request, Defendant provided a valid Florida identification card to Deputy Jackson. Deputy Jackson proceeded to run a check for outstanding warrants on Defendant's identification from his patrol car. Sergeant Dean Rodriguez arrived on the scene to assist with the investigative detention of Defendant. While Deputy Jackson was running a check on Defendant, Deputy Wells and Sergeant Rodriguez stood on the sidewalk with Defendant. During the time that Deputy Jackson was in his patrol car,

---

[2] The United States also asserts that Defendant's Motion should be denied as untimely. (Dkt. No. 14 at 2.) However, the Court rejects this argument, since the United States has failed to establish any prejudice by the late filing of the Motion and because Defendant's Motion has merit.

2

Defendant repeatedly put his hands in his pockets. Each time Defendant put his hands in his pockets Deputy Wells directed Defendant to keep his hands where she could see them, and Defendant would comply by pulling his hands out of his pockets. This occurred approximately seven to eight times.

During his warrants check on Defendant, Deputy Jackson discovered that Defendant was classified as a Habitual Violent Offender of Special Concern, was on probation for Driving While License Suspended, and that he did not have any outstanding arrest warrants. After Deputy Jackson got out of his patrol car and approached Defendant and the other officers, Deputy Jackson asked Defendant if he had anything illegal on his person and then requested Defendant's permission to search his person.[3] Upon Deputy Jackson's request to search, Defendant again placed his hands in his pockets and quickly removed them upon the officer's request. But Defendant then abruptly placed his hands back in his pockets and turned away[4] from Deputy Jackson and toward Deputy Wells. At this point in time, Deputy Jackson and Deputy Wells grabbed Defendant's arms, pushed him up against a nearby fence, and removed his hands from his pockets by force. Deputy Jackson performed a pat-down of Defendant, and felt the outline of what he believed to be a firearm in Defendant's right pants pocket. The officers then searched and discovered in Defendant's right pants pocket a .22 caliber firearm. The firearm was loaded with one round of .22 caliber ammunition. The officers gave Defendant a verbal warning for the traffic violations, arrested him, and charged him with Possession of a Firearm by a Violent Career Criminal, Possession of Ammunition by a Violent Career Criminal, and Carrying a Concealed Firearm.

---

[3] Whether Defendant gave his consent to allow the officers to search his person is in dispute.

[4] Deputies Jackson and Wells described Defendant's body movement as "blading away."

**B. Analysis**

The core issues before the Court are first, whether the officers had probable cause to conduct a traffic stop of Defendant and detain Defendant to investigate the alleged bicycle traffic violations, and second, whether the officers were justified in conducting a pat-down of Defendant during the investigative detention.[5] The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). There are three types of lawfully recognized encounters between police and citizens for Fourth Amendment purposes: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006); *see Brown v. Illinois*, 422 U.S. 590, 596 (1975); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Florida v. Bostick,* 501 U.S. 429, 434-35 (1981). A traffic stop is a seizure under the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648 (1979). The decision to make a traffic stop is generally reasonable "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened." *United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012) (citing *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010)). "[D]efinitive evidence of a weapon or absolute certainty that an individual is armed" is not necessary to justify a pat-down of an individual, rather "[t]he issue

---

[5] The United States also argued an additional issue in that Defendant consented to the search of his person upon Deputy Jackson's request. (Dkt. No. 14, 8-9.) Whether Defendant knowingly and voluntarily gave consent to search his person is clouded because Defendant disputes that he gave his consent to search, and Defendant's non-verbal actions in response to Deputy Jackson's requests to search are not indicative of Defendant relenting his consent to search. However, in light of the Court's findings regarding the pat-down of Defendant, the Court need not address whether there was a valid consent.

is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* Here, given the Court's findings of fact, the Court is satisfied that Defendant was legally detained for a valid bicycle traffic infraction and that the pat-down of Defendant was justified.

Based upon their observations of Defendant, Deputies Jackson and Wells had sufficient probable cause to stop and detain Defendant for driving a bicycle between sunset and sunrise without a front headlight and for driving his bicycle in the middle of the road and against traffic. *See* Fla. Stat. § 316.2065(7), (5)(a) (2012). Although Defendant denied during his testimony that he was riding his bicycle in the middle of the road and against traffic, Defendant did not dispute that his bicycle did not have a light as required under the law. Thus, even if the Court accepted Defendant's testimony that he was not riding his bicycle in the middle of the road as credible, which the Court does not, the officers still had probable cause to stop and detain Defendant given that it was after sunset, and Defendant's bicycle was not properly equipped with a light in violation of Florida Statute § 316.2065(7). Thus, the officers' stop and subsequent detention of Defendant to investigate the bicycle infractions did not violate Defendant's Fourth Amendment rights.

As to the lawfulness of the pat-down of Defendant during the investigative detention, the requisite inquiry is whether it was reasonable for the officers to fear for their safety when Defendant turned away from the officers and put his hands back into his pockets despite the directive to keep his hands out of his pockets. Notably, Defendant asserted during his testimony that he could not recall ever putting his hands inside his pockets as the Deputies claimed. However, the Court finds the Deputies' testimony in this regard entirely credible. The Court is satisfied that while awaiting the results of Deputy Jackson's warrants check, Deputy Wells

repeatedly directed Defendant to keep his hands visible and out of his pockets. Despite the directive by Deputy Wells to keep his hands out of his pockets, Defendant failed to comply and put his hands back in his pockets upon being asked by Deputy Jackson for his consent to search his person. Defendant was again instructed to remove his hands from his pockets, Defendant complied, but Defendant then abruptly put his hands back into his pockets and turned away from Deputy Jackson and toward Deputy Wells. The United States argues that the pat-down of Defendant was justified since the stop of Defendant occurred in an alleged high-crime area, Deputy Jackson knew that Defendant was classified as a habitual offender, and Defendant repeatedly failed to comply with the officers' directions. Certainly, the totality of the circumstances strengthen the United States' position on the justification of the pat-down. However, the Court is satisfied that Defendant's non-compliant conduct alone is more than sufficient to justify the officers' belief that a pat-down was necessary to ensure their safety. Simply stated, it was reasonable for the officers to believe a pat-down of Defendant was necessary to ensure their safety given that Defendant, after having been repeatedly instructed to keep his hands out of his pockets, put his hands back in his pockets and moved his body away from Deputy Jackson toward Deputy Wells. Certainly, given the context of Defendant's actions it was reasonable for the officers to want to ensure that Defendant did not have anything in his pockets that could be harmful to the officers. Therefore, the pat-down of Defendant was valid.

Although not briefed by Defendant, Defendant raised an additional argument during the September 18, 2013 hearing, in that Defendant claimed his detention was unlawfully prolonged because Deputy Jackson exceeded the purpose of the alleged investigative detention by requesting Defendant's consent to search his person. As noted above, a traffic stop is a seizure within the meaning of the Fourth Amendment, but because a routine traffic stop is only a limited

6

form of a seizure, it is more analogous to an investigative detention than a custodial arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Thus, the legality of a traffic stop is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir.1990). Under *Terry*, an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Significantly, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. *See United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir.1999). The traffic stop may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. *See United States v. Holloman*, 113 F.3d 192, 196 (11th Cir.1997). Here, Defendant argues that Deputy Jackson's request to search his person was not reasonably related to the purpose of his detention. In other words, Defendant questions the relationship between the purpose of the detention, i.e. to investigate the alleged bicycle infractions, and Deputy Jackson's request to search Defendant's person.

The Courts have differed on the scope of permissible questions during traffic stops. *Compare United States v. Holt*, 229 F.3d 931, 940 (10th Cir.2000) (finding that an unrelated question exceeds the reasonable scope of a traffic stop absent reasonable suspicion of illegal activity or reasonable safety concerns), *with United States v. Shabazz*, 993 F.2d 431, 436-437 (5th Cir.1993) (stating that "detention, not questioning, is the evil at which Terry's [prohibition] is aimed."). The Eleventh Circuit has not specifically adopted any one test to determine the legality of questions posed during a traffic stop (or any investigative detention) unrelated to the purpose of the stop. Rather, the Eleventh Circuit has reiterated that the "'touchstone of the Fourth Amendment is reasonableness . . . ' [and] reasonableness is measured by examining the

totality of the circumstances." *United States v. Purcell*, 236 F.3d 1274, 1278-79 (11th Cir. 2001) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Further, the Eleventh Circuit has cautioned that within a Fourth Amendment analysis "[r]igid time limitations and bright-line rules are generally inappropriate." *Id*. (citations omitted). Although the Eleventh Circuit has stated that "[a]n officer conducting a routine traffic stop may request consent to search . . . ," here, the Court must still evaluate the totality of the circumstances to determine whether Deputy Jackson's request to search offended Defendant's constitutional rights. *Id.*

Deputy Jackson asserted that he requested Defendant's consent to search his person because the stop was in a high crime area and he had just learned that Defendant was a habitual offender. However, under cross-examination, Deputy Jackson acknowledged that upon contact with any individual in the area in which the traffic stop occurred, he routinely seeks permission to search the individual as a law enforcement tactic. Although Deputy Jackson acknowledged that he routinely requests permission to search individuals in this area, nothing in the record indicates that Deputy Jackson unreasonably delayed or prolonged the investigative detention of Defendant in order to obtain Defendant's permission to search. Rather, the request here was made as Deputy Jackson was simultaneously concluding his investigation. Deputy Jackson's request to search was nothing more than, at worst, a *de minimis* delay of Defendant's detention. Thus, Deputy Jackson's request to search was not an infringement upon Defendant's Fourth Amendment rights because Deputy Jackson had probable cause to originally detain Defendant and his request to search Defendant in no way meaningfully extended Defendant's detention. Further, it is important to note that Deputy Jackson's request to search was not an invasive action that resulted in the discovery of the firearm. Rather, it was Defendant's conduct in response to

Deputy Jackson's request to search that eventually resulted in the valid pat-down of Defendant and the eventual lawful discovery of the firearm.

Accordingly, after due consideration and for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Illegally Seized Evidence (Dkt. No. 12) be **GRANTED** in part in that Defendant's post-arrest statements be suppressed, and **DENIED** in part as to the request to suppress the firearm from evidence at trial.

**IT IS SO REPORTED** at Tampa, Florida on this 22nd day of October, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Virginia M. Covington

Counsel of Record